# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Meredith DeMarco

**DEFENDANTS**

Jillamy, Inc., Mode Global, LLC, Mode Transportation, LLC and TTS, LLC

**(b)** County of Residence of First Listed Plaintiff   Bucks County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bucks County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Susan Saint-Antoine,, Esq., Console Mattiacci Law,
1525 Locust St., 9th Fl., Philadelphia, PA 19102 (215) 545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq. ("Title VII"); 43 P.S. §951, et seq. ("PHRA")
Brief description of cause:
Plaintiff was discriminated against because of her sex and/or because she engaged in protected activity.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   3/2/2026

SIGNATURE OF ATTORNEY OF RECORD   *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _Chalfont, PA_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                                                  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?                Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?                                                                                                                                                         Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?                         Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **see certification below**
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.* *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Meredith DeMarco | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Jillamy, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( X )

| | | |
|---|---|---|
| 3/2/2026 | | Plaintiff, Meredith DeMarco |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2858 | santanto@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____ :
:
MEREDITH DEMARCO,                                         :
                                                         :          CIVIL ACTION NO.
                                 Plaintiff,               :
                    v.                                   :
                                                         :
JILLAMY, INC.,                                           :
                                                         :
                                                         :
MODE GLOBAL, LLC                                         :
        d/b/a MODE and/or MODE Transportation,           :
                                                         :
                                                         :
                                                         :          JURY TRIAL DEMANDED
MODE TRANSPORTATION, LLC,                                 :
        d/b/a MODE  and/or MODE Transportation           :
                                                         :
                                                         :
        and                                              :
                                                         :
                                                         :
TTS, LLC,                                                :
        d/b/a MODE and/or MODE Transportation,           :
                                                         :
                                                         :
                                 Defendants.              :
                                                         :
_____ :

## **COMPLAINT**

## I.    **INTRODUCTION**

Plaintiff, Meredith DeMarco, brings this employment discrimination action against Jillamy, Inc. ("Jillamy"), and also against MODE Global, LLC d/b/a MODE and/or MODE Transportation; MODE Transportation, LLC d/b/a MODE and/or MODE Transportation; and TTS, LLS d/b/a MODE and/or MODE Transportation.  (The MODE entities are

referred to collectively as "MODE".  Together with Jillamy, they are referred to as "Defendants.")

Plaintiff was an employee of Jillamy who was very good at her job. No one could -- or does -- contend otherwise.

During her employment with Jillamy, Plaintiff was subjected to a continuing sex-based and retaliatory hostile work environment.  When her internal complaints were not remedied, in or about July, 2024, Plaintiff filed a complaint against Jillamy with the PHRC, which was dual-filed with the EEOC.  While the PHRC/EEOC Complaint/Charge was pending, Jillamy entered into an Equity Asset Purchase Agreement whereby Jillamy sold certain assets to MODE, with whom it had a long-standing independent business agency relationship.  MODE continued to operate the business as before, at the same location with largely the same workforce and management.

All Defendants were aware that Plaintiff had engaged in protected activity and that she had a Complaint/Charge pending before the PHRC/EEOC.  None remedied the sex-based and retaliatory hostile work environment to which Plaintiff was subjected and of which she complained both internally and to the PHRC/EEOC.  Instead, they retaliated against her by ending her employment.  Within a week of Plaintiff's confirming to Jillamy's co-owner/CEO her intention to pursue her pending PHRC/EEOC Charge, Jillamy notified Plaintiff of her termination. The sex-based and retaliatory hostile work environment to which Plaintiff was subjected culminated in her termination by Defendants because of her sex and/or her having engaged in protected activity.  Plaintiff was notified of her termination of employment with Jillamy and was not extended an offer to continue in her job with and/or hired by MODE (as were most of the 200+

employees including those specifically identified as harassers) because of her sex and/or her protected activity.

Plaintiff brings this action against Defendants, jointly and severally, for sex discrimination and retaliation, including subjecting her to a  sex-based and/or retaliatory hostile work environment and termination of employment/failure to hire, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* "("PHRA").  Plaintiff seeks damages for past and future economic loss and pain and suffering, attorney's fees and costs, and all other relief (including equitable) as this Cout deems appropriate.

## II.    PARTIES

1.      Plaintiff, Meredith DeMarco, is an individual and a citizen of the Commonwealth of Pennsylvania, residing therein in Chalfont, Pennsylvania.

2.      Plaintiff is female.

3.      Defendant, Jillamy, Inc. is a Pennsylvania corporation with headquarters and a principal place of business located at 160 New Britain Blvd., Chalfont, Pennsylvania 18914.

4.      Defendant MODE Global, LLC d/b/a MODE and/or MODE Transportation is a limited liability company organized under the laws of the state of Delaware.  Its headquarters is located at 14785 Preston Road, Suite 850, Dallas Texas, 75254.

5.      Defendant MODE Transportation, LLC d/b/a MODE and/or MODE Transportation is a limited liability company organized under the laws of the state of

Delaware.  Its headquarters is located at 14785 Preston Road, Suite 850, Dallas Texas, 75254.

6.      Defendant MODE Transportation, LLC d/b/a MODE and/or MODE Transportation is part of the MODE Global LLC self-described "family" of affiliated and controlled subsidiary companies.

7.      Defendant TTS, LLC d/b/a MODE and/or MODE Transportation is a limited liability company organized under the laws of the state of Delaware.  Its headquarters is 14785 Road, Suite 850, Dallas, Texas, 75254.

8.      Defendant TTS, LLC d/b/a MODE and/or MODE Transportation is part of MODE Global LLC "family" of affiliated and controlled subsidiary companies.

9.      Defendants MODE Global, LLC, MODE Transportation, LLC, and TTS, LLC share common ownership, management, and control.  The entities do business as MODE and/or MODE Transportation and hold themselves out as part of a single entity of affiliated companies within the MODE Global, LLC umbrella.

10.      At all times material hereto, defendants MODE Global, LLC, MODE Transportation, LLC, and TTS, LLC, have acted as a single employer, joint employer, and/or alter egos.

11.       Jillamy is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

12.      MODE is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

13.      MODE maintains several operations in Pennsylvania, including at 160 New Britain Boulevard, Chalfont, Pennsylvania, 18914 (where Plaintiff used to work

while an employee of Jillamy and which MODE continues to lease from Jillamy and/or one of its affiliates with whom it shares ownership).

14.    At all times material hereto, Jillamy employed more than fifteen (15) employees.

15.    At all times material hereto, MODE employed more than fifteen (15) employees.

16.    At all times material hereto, Jillamy acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Jillamy and in furtherance of Jillamy's business.

17.    At all times material hereto, MODE acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with MODE and in furtherance of MODE's business.

18.    At all times material hereto, MODE was an employer within the meaning of Title VII.

19.    At all times material hereto, MODE was an employer and/or person within the meaning of the PHRA.

20.    At all times material hereto, Jillamy was an employer within the meaning of Title VII.

21.    At all times material hereto, Jillamy was a person and/or employer within the meaning of the PHRA.

## III.    <u>JURISDICTION AND VENUE</u>

22.    The causes of action which form the basis of this matter arise under Title VII, the PHRA, and common law.

23.     The District Court has jurisdiction over the Counts asserted under Title VII pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

24.     The District Court has supplemental jurisdiction over the Counts asserted under the PHRA and the common law/successor liability pursuant to 28 U.S.C. § 1367.

25.     Venue is proper in the District Court under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

26.     On or about July 11, 2024, Plaintiff filed with the Pennsylvania Human Relations Commission ("PHRC") a Complaint against Jillamy, Inc. complaining of sex discrimination and retaliation.  The PHRC Complaint was cross-filed with the EEOC. Attached hereto, incorporated herein and marked as Exhibit 1 is a true and correct copy of the PHRC/EEOC Complaint/Charge (with personal identifying information redacted).

27.     On or about November 4, 2024, Plaintiff filed a Second Complaint with the PHRC against Jillamy, Inc. and MODE Global, LLC and Mode Transportation complaining of sex discrimination and retaliation.  Plaintiff's Second PHRC Complaint was cross-filed with the EEOC.  Attached hereto, incorporated herein and marked as Exhibit 2 is a true and correct copy of Plaintiff's Second PHRC/EEOC Complaint/Charge (with personal identifying information redacted).

28.     More than one year has passed since the filing of Plaintiff's first and second Complaint/Charge.

29.     On or about December 12, 2025, the EEOC issued to Plaintiff a Notice of Right to Sue on each Charge.

30.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

31.    Defendant Jillamy, Inc. is subject to the personal jurisdiction of this Court because, without limitation, it is headquartered and at home in Pennsylvania and/or Plaintiff's claims arise from or are related to its contacts in Pennsylvania.

32.    Defendant MODE Transportation, LLC is subject to the personal jurisdiction of this Court because, without limitation, it has registered to business in Pennsylvania and thereby consented to jurisdiction, it purposefully avails itself of the benefits of Pennsylvania by regularly conducting business here, it engages in continuous and systematic contacts such that it is at home in Pennsylvania, it directed, committed and/or foresaw the injury to Plaintiff occurring in Pennsylvania, and/or Plaintiff's claims arise from or are related to its contacts in Pennsylvania.

33.    Defendant TTS, LLC is subject to the personal jurisdiction of this Court because, without limitation, it has registered to business in Pennsylvania and thereby consented to jurisdiction, it purposefully avails itself of the benefits of Pennsylvania by regularly conducting business here, it engages in continuous and systematic contacts such that it is at home in Pennsylvania, it directed, committed and/or foresaw the injury to Plaintiff occurring in Pennsylvania, and/or Plaintiff's claims arise from or are related to its contacts in Pennsylvania.

34.    Defendant MODE Global, LLC is subject to the personal jurisdiction of this Court because, without limitation, it purposefully avails itself of the benefits of Pennsylvania by regularly conducting business here, it engages in continuous and systematic contacts such that it is at home in Pennsylvania, it directed, committed and/or foresaw the injury to Plaintiff occurring in Pennsylvania, and/or Plaintiff's claims arise from or are related to its contacts in Pennsylvania.

## IV.    FACTUAL ALLEGATIONS GIVING RISE TO CLAIMS

35.    Jillamy was founded in 2001 by co-owners Christopher Kiefer (male) and Theodore Kuriger (male) as an independent logistics company.

36.    Since in or about 2002, Jillamy operated as an Independent Business Owner ("IBO") for defendant Mode Global, LLC and did business as "MODE Transportation."

37.    Mr. Kiefer was the President of Jillamy; Mr. Kuriger was its CEO.

38.    Jillamy hired Plaintiff on or about April 24, 2017.

39.    Plaintiff received throughout her employment a W-2 from "Jillamy, Inc."

40.    Plaintiff was Jillamy's Ocean Export Manager and was responsible for the company's international exports.

41.    Plaintiff at all times performed her duties in a highly competent manner.

42.    The superior quality of Plaintiff's work had been recognized, and she never received a performance evaluation that was less than satisfactory.

43.    Plaintiff reported to Bob Skulsky (male), Director Of International Operations, who reported to Ray Knott (male), International Director, who reported to Frank Whalen (male), Executive Vice President.  Mr. Whalen reported to Mr. Kuriger and Mr. Kiefer.

## Plaintiff was subjected to a sex-based and retaliatory hostile work environment.

44.    Jillamy had a corporate culture of sexism.

45.    President Kiefer set the tone.  For example, and without limitation, Mr. Kiefer took employees to strip clubs.

8

46.     International Director Knott was known to be vulgar and sexist.  For example, and without limitation, he regularly commented on women's bodies and appearances.

47.     Female employees had complained of sex discrimination and retaliation, which Jillamy did not remediate and which it condoned.

48.     Plaintiff was regularly subjected to discriminatory comments and conduct because of her sex.  Without limitation:

  a. When the company moved to a new location, Mr. Knott told Plaintiff words to the effect that "if you're a good little girl, you can get an office, too."  When Chad Viola was hired by the company, Mr. Knott told Plaintiff that he was going to put Mr. Viola in an office and keep Plaintiff in a cubicle.   In response to Plaintiff's complaint to Mr. Skulsky about Mr. Knott's sexist and demeaning remark, Mr. Skulsky replied with words to the effect of "you know how Ray is."

  b. Chris Gordon (male), Head of Sales, made unwanted sexual overtures to Plaintiff.

  c. Mr. Gordon yelled at Plaintiff after she rebuffed his advances.

  d. In or about late February/early March, 2022, Mr. Knott instructed Plaintiff and another female to attend in California a TPM conference on behalf of Jillamy because they needed "pretty faces" to draw people to the company's booth.  People at work talked about Mr. Knott inviting Plaintiff and the other woman because they were good looking women.

    e.   During the TPM conference, Jillamy employees were invited on a boat tour, which Plaintiff attended.  Plaintiff was told by another female that, while on the boat, Ty LaSalle (male), Director of National Accounts, had taken and distributed to other employees salacious photos and a video of Plaintiff while leaning over the boat.  Mr. Knott told Plaintiff that he also took photos of Plaintiff and words to the effect that if he was "going to do something dirty to [him]self to a picture of her," it would be a photo of her steering the boat that he had taken.  After the conference, Mr. Gordon told her that another male (James Cardonna) took a photo of Plaintiff that zoomed in on her breasts.

49.    Plaintiff complained of the sex-based hostile conduct to Mr. Skulsky, who told her that he would talk to VP Whelan who would address things.

50.    Notwithstanding Mr. Skulsky's assurance, nothing was done to remediate the sex-based hostile work environment to which Plaintiff was subjected.  On the contrary, things became worse.

51.    Following Jillamy's Annual Sales Conference in Atlantic City in or about late March, 2022, Mr. Knott began spreading rumors that Plaintiff had a sexual encounter with another Jillamy employee at the Atlantic City conference.

52.    Plaintiff was harassed thereafter on a near daily basis.  For example, and without limitation:

    a.   Male employees commented about Plaintiff "f***ing" a coworker.

    b.   Mr. Gordon yelled within Plaintiff's earshot about Plaintiff on a regular basis to Mr. Skulsky.  Mr. Gordon told Plaintiff he was so upset

because he had feelings for her and wished that she was having a relationship with him.

c.  Mr. Gordon repeatedly asked Plaintiff and others if Plaintiff was having a sexual relationship with the coworker.

d.  Mr. Gordon refused to work with Plaintiff.

e.  Plaintiff's coworkers asked her if she was having a relationship with the coworker.

f.  Plaintiff was told that employees were calling her a "whore."

g.  Mr. Knott made sexist, vulgar, and hostile statements to Plaintiff.  For example, and without limitation, when she was leaving for lunch, he told her that she "better make it a quick f*** today."

h.  Mr. Skulsky started to micro-manage Plaintiff.

i.  Whereas Mr. Skulsky did not used to question any email Plaintiff sent, he now began to pick apart her emails.

j.  Mr. Skulsky told Plaintiff that she needed to tell him every time she left the building, which he never instructed his male or non-complaining direct reports to do.

k.  Mr. Skulsky instructed Plaintiff to park on a different side of the building than her coworker.

l.  Mr. Skulsky told her that she was not allowed on the same side of the building as the co-worker with whom she was rumored to have a relationship, and required her to use a bathroom on a different floor.

m. Mr. Skulsky had coworkers spying on her and reporting where she was.

n. Plaintiff was told that she and her coworker were being followed and photographed.

o. Mr. Skulsky told Plaintiff that, if it came down to it, the company would fire her but not the male coworker with whom she was rumored to be in a relationship.

p. Mr. Skulsky forbade Plaintiff from traveling for work related events with the male coworker.

q. Plaintiff was told by a coworker (Beau Palmore, male) that Mr. Knott and Mr. Skulsky had been in her office, going through her things, looking to see how often she spoke with the male coworker on the office phones, and stated that they were looking to get rid of her.

r. Mr. Skulsky told Plaintiff that at no time was she permitted to have her office door closed and that he did not want people to come into her office to talk to her.

s. Mr. Kiefer told the coworker with whom she was rumored to be having a relationship that Jillamy hired a private investigator and had pictures of Plaintiff with him.

**Plaintiff makes a formal complaint to Human Resources.**

53.    In or about January, 2023, Plaintiff complained to Kelli Issler (female), Jillamy's Head of Human Resources.

54.     Ms. Issler told Plaintiff that Mr. Skulsky and Mr. Knott had come to her to tell her that Plaintiff was having an affair with a co-worker.

55.     Jillamy company policies did not prohibit relationships among coworkers who were not in a supervisory reporting relationship.

56.     Plaintiff was not the supervisor of the coworker with whom she was rumored to be having an affair; nor was he Plaintiff's supervisor.  Nothing in Jillamy policies prohibited the rumored relationship.

57.     In February, 2023, Plaintiff submitted a written statement to Ms. Issler and Megan Christensen (female), Jillamy in-house counsel, complaining of the sex discrimination to which she was being subjected, the company's failure to remedy the discrimination, and the retaliation to which she had been subjected.

58.     Jillamy apparently interviewed people in connection with Plaintiff's complaint and they corroborated Plaintiff's allegations.

59.     Notwithstanding the corroboration, Jillamy failed to resolve or remedy Plaintiff's complaints.

60.     For months, Plaintiff went to Human Resources and VP Whelan and asked the company to remedy the sex discrimination and hostile work environment to which she was being continuously subjected, but the company failed to do so.

61.     Plaintiff did not receive any substantive response to her sex discrimination complaint.

62.     Plaintiff went directly to Mr. Kuriger to complain.  Mr. Kuriger told her that he suspected that she did not attend the 2023 company conference in Atlantic City

because of Mr. Knott and assured her that the company would take steps to remedy the situation.

63.    Jillamy did not address or remedy the hostile work environment to which Plaintiff was being subjected.

64.    The hostile work environment to which Plaintiff was subjected became worse.  For example, and without limitation:

    a.  In or about Spring, 2024, Plaintiff received her 2023 performance evaluation.  At the end of the meeting, Mr. Skulsky told Plaintiff words to the effect of, "Don't forget  -- you're not allowed to leave the office without telling me."

    b.  Plaintiff was assigned menial tasks.

    c.  Mr. Skulsky treated Plaintiff like his assistant, not like the Ocean Export Manager.  He asked her to do tasks – like ordering lunch – that he never asked of his male reports.

    d.  Around the end of May, 2024, Mr. Skulsky told Plaintiff to go to Human Resources.  Even though Plaintiff was wearing a dress she had worn many times before without incident and Ms. Issler agreed that Plaintiff was dressed appropriately for the office, Ms. Issler told Plaintiff that Mr. Skulsky said her dress was too short and wanted her to go home and change.  Plaintiff did as she was told.

    e.  To Plaintiff's knowledge, no one had ever been sent home before for inappropriate dress, even though there were people in the office every day who were in blatant violation of the company's dress code.

change.  Complaints regarding dress were not made about males or
non-complainers.

   f.   In Summer, 2024, Mr. Gordon left Plaintiff off of emails and excluded
   her from meetings that fell within her area of responsibility, thus
   impeding her ability to do her job.

   g.   Mr. Skulsky nit-picked at Plaintiff's emails.

**Plaintiff files PHRC/EEOC Complaint/Charge against Jillamy**

65.    Plaintiff had a good faith, reasonable belief that Jillamy was violating Title
VII and the PHRA, and on or about July 11, 2024, she engaged in further protected
activity by filing a complaint with the PHRC and cross-filing it with the EEOC.

66.    Plaintiff's PHRC/EEOC Complaint/Charge alleged, among other things,
that Jillamy was subjecting Plaintiff to a continuing sex-based hostile work environment,
failed to remedy the sex-based discrimination, and had subjected her to a retaliatory
hostile work environment.

67.    As of mid to late July, 2024, Plaintiff's PHRC/EEOC Complaint/Charge
was known to, at least, Mr. Skulsky, Mr. Whelan, Ms. Issler, Ms. Christensen, and others
in company leadership.

68.    Jillamy never told Plaintiff that her complaints were resolved.

69.    Jillamy never resolved, remediated or took steps to prevent the continuing
sex-based and retaliatory hostility to which Plaintiff was subjected.

70.    Plaintiff continued to be treated differently and worse than her male and/or
non-complaining coworkers.  Without limitation:

   a.    Plaintiff continued to be belittled by Mr. Skulsky.

b.     Plaintiff continued to be demeaned by Mr. Skulsky.

c.     Plaintiff continued to be the subject of sexist and vulgar remarks.

d.     Plaintiff continued to be watched as far as when she left the office and came back.

e.     Mr. Gordon continued to leave Plaintiff off of emails pertaining to her responsibilities and duties.

f.     Mr. Skulsky continued to try to make Plaintiff's work miserable.

g.     Mr. Skulsky continued to pick apart Plaintiff's emails.

g.     Mr. Skulsky, Mr. Knott and Mr. Gordon heard Plaintiff crying in her office every day about the treatment to which she was subjected, and continued it.

**Jillamy terminates Plaintiff, and MODE fails to hire her**

71.     Upon information and belief, in or before July, 2024, defendants executed a Letter of Intent whereby Jillamy – an IBO doing business as MODE Transportation – would sell certain of its assets to MODE.

72.     Upon information and belief, in or about September 27, 2024, MODE distributed a revised Letter of Intent to Jillamy.

73.     On or about October 18, 2024, Mr. Kuriger met with Plaintiff and asked her about her pending PHRC Complaint.

74.     Plaintiff complained to Mr. Kuriger of the sex discrimination to which she had been subjected, including sexual harassment and retaliation, and provided him with details of the same that were included in her first PHRC/EEOC Complaint/Charge.

75.     Mr. Kuriger told Plaintiff that MODE was aware of Plaintiff's pending PHRC/EEOC Complaint/Charge.

76.     MODE was aware of Plaintiff's pending PHRC/EEOC Complaint/Charge.

77.     Mr. Kuriger expressed to Plaintiff that MODE did not want to have to conduct an investigation into her allegations post-acquisition.

78.     Plaintiff told Mr. Kuriger that she intended to pursue her pending PHRC/EEOC Complaint/Charge.

79.     On or about October 24, 2024, in a meeting attended by, *e.g.,* VP Whalen and Ms. Issler from HR, Ms. Issler told Plaintiff that her employment was terminated effective immediately.

80.     Plaintiff was told that she was being terminated because her job was duplicated by other employees.

81.     The reason given to Plaintiff for her termination was false.

82.     The reason given to Plaintiff for her termination was a pretext for sex discrimination and/or retaliation for her protected activity, including her internal complaints and/or her pending PHRC/EEOC Complaint/Charge.

83.     Ms. Issler told Plaintiff that MODE did not know about her pending PHRC/EEOC Complaint/Charge.

84.     Ms. Issler's statement that MODE did not know about Plaintiff's PHRC Complaint was false.

85.     When Plaintiff called Ms. Issler on the falsity of her statement, Ms. Issler stopped talking altogether.

86.    On or about November 1, 2024, Jillamy gave Plaintiff a letter written on stationary bearing the "Jillamy" logo and signed by Ms. Issler.  The letter stated, among other things:  "This letter shall serve as a follow-up to the discussion that your employment with Jillamy, Inc. is terminated effective 11/1/2024, for Layoffs."

87.    The reason given to Plaintiff for her termination ("for Layoffs") was false.

88.    The reason given to Plaintiff for her termination ("for Layoffs") was a pretext for sex discrimination and/or retaliation for her protected activity including her internal complaints and/or pending PHRC/EEOC Complaint/Charge.

89.    On November 1, 2024, MODE and Jillamy executed an Equity And Asset Purchase Agreement (the "EAPA") whereby MODE acquired certain assets of Jillamy.

90.    Upon information and belief, the asset purchase closed on November 4, 2024.

91.    Jillamy, Inc. continued to exist and continued to employ people after the asset purchase.

92.    MODE continued Jillamy's prior operations as before, in the same location, and with largely the same workforce and management.

93.    Per the EAPA, MODE was obligated to offer and hire the Jillamy employees identified as "Business Employees."  Business Employees hired by MODE became "Hired Employees."

94.    Per the EAPA, MODE acquired from Jillamy all Books and Records, which included all personnel files and records relating to the employment of the Business Employees.

95.     Per the EAPA, MODE agreed that for six months, it would pay Hired Employees an amount equal to what they earned from Jillamy.

96.     Per the EAPA, MODE agreed to recognize service with Jillamy for purposes of benefit plans.

97.     Per the EAPA, MODE agreed to pay the full amount of the Earned Bonus Amount to Hired Employees if they remained employed through a certain date.

98.     MODE had the ability to continue Plaintiff's employment and to remedy the hostile work environment to which Plaintiff was subjected.

99.     The EAPA had a Schedule of "Business Employees" who were to be offered employment with MODE and a Schedule of "Terminated Employees," who were not.

100.     EAPA § 2.8 (b)(xii)  provided that at the Closing, Seller [Jillamy] shall deliver to Buyer [MODE] evidence of the "termination of all Terminated Employees effective as of immediately prior to the Closing."

101.     The EAPA included a Scheduled VI, which identified Plaintiff as among the "Terminated Employees."

102.     Plaintiff was identified as a Terminated Employee because of her sex and her protected activity, including her internal complaints and/or pending PHRC/EEOC Complaint/Charge.

103.     The EAPA included a Schedule V, which identified the "Business Employees," *i.e.*, those who were not "Terminated Employees" and who were to be extended an offer of continued employment with MODE.

104.    Among the Business Employees were those identified by Plaintiff as having subjected her to hostile sex-based and retaliatory comments and conduct and/or who failed to remedy or prevent further discrimination and retaliation, including Mr. LaSalle, Mr. Knott, Mr. Skulsky, Mr. Gordon, Mr. Whelan, Mr. Kuriger, and Mr. Kiefer.

105.    While Plaintiff was among the "Terminated Employees," several similarly situated male employees were identified among the "Business Employees" whose employment would continue.  For example, and without limitation, Greg Ryan, Import Manager, and Beau Palmore, International Traffic Manager.

106.    While Plaintiff was among the "Terminated Employees," several similarly situated non-complaining employees were identified among the "Business Employees" whose employment would continue.  For example, and without limitation, Mr. Ryan and Mr. Palmore.

107.    While Plaintiff was among the "Terminated Employees," male and/or non-complaining employees who reported to Mr. Skulsky and/or Mr. Knott were not.

108.    Employees, including Mr. Kuriger, have stated that Plaintiff was terminated because of her complaint.

**Defendants make misrepresentations to PHRC/EEOC about Plaintiff's termination.**

109.    On November 4, 2024, Plaintiff filed with the PHRC a "Second Complaint" against Jillamy, Inc., Mode Global, LLC, and Mode Transportation as Respondents, which was dual filed with the EEOC, and which complained that all Respondents discriminated against her because of her sex and retaliated against her for engaging in protected activity.  The Second Complaint alleged that Respondents subjected Plaintiff to a sex-based and retaliatory hostile work environment that constituted a continuing

violation and terminated her employment because of her sex and/or engaging protected activity, including filing a PHRC Complaint.

110.    In its December 27, 2024, Position Statement responding to Plaintiff's Second PHRC Complaint, Jillamy told the PHRC:  "Jillamy never fired Ms. DeMarco or took any adverse action against her."

111.    Jillamy's assertion to the PHRC is false.

112.    Jillamy terminated Plaintiff because of her sex and/or her having engaged in protected activity, including her pending PHRC/EEOC Complaint/Charge.

113.    Defendants MODE Global, LLC and MODE Transportation ("MODE") submitted to the PHRC an Answer to Plaintiff's Second PHRC Complaint.  In it, MODE did not deny that it was aware of Plaintiff's PHRC Complaint and/or that she had engaged in protected activity.

114.    MODE was aware of Plaintiff's having engaged in protected activity, including her pending PHRC complaint.

115.    MODE was aware that Plaintiff opposed and filed a Complaint/Charge alleging unlawful discriminatory and retaliatory practices that were to continue post-EAPA closing in light of the planned continuation of operations, workforce and management.

116.    By directing Jillamy to terminate Plaintiff's employment, MODE acted as a joint employer with Jillamy in connection with the termination of her employment and/or is responsible as an "employer" for Plaintiff's unlawful termination.

117.    MODE told the PHRC "that, in connection with the acquisition, MODE extended employment to a subset of Jillamy, Inc. employees as a result of legitimate

business factors including declining revenue requiring costs reductions and opportunities for operational efficiencies." MODE further stated: "MODE Respondents admit that they did not hire Complainant after she was terminated by Jillamy, Inc. The MODE Respondents' decision not to extend employment offers was part of a broader business restructuring affecting multiple departments and positions."

118.    MODE's stated reason for not hiring Plaintiff is false and a pretext for sex discrimination and/or retaliation.

119.    MODE directed Jillamy to terminate the employment of Plaintiff because she engaged in protected activity, including her internal complaints and/or pending PHRC/EEOC Complaint/Charge.

120.    MODE did not extend an offer of employment and/or hire Plaintiff because she engaged in protected activity, including her internal complaints and/or pending PHRC/EEOC Complaint/Charge.

121.    MODE did not extend an offer of employment to Plaintiff because her internal complaints and/or pending PHRC/EEOC Complaint/Charge made allegations of unlawful behavior that implicated the operations, workforce and management of Jillamy that was to be continued post-acquisition per the EAPA, under MODE's ownership.

122.    MODE aided, abetted, incited, compelled or coerced Jillamy to terminate Plaintiff's employment in violation of the PHRA.

123.    MODE aided, abetted, incited, compelled or coerced Jillamy to subject Plaintiff to a sex-based and/or retaliatory hostile work environment culminating in her termination in violation of the PHRA.

124.    Jillamy aided or abetted MODE's failure to hire Plaintiff in violation of the PHRA.

125.    Plaintiff's sex was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including the hostile work environment to which Plaintiff was subjected, and the termination of Plaintiff's employment and/or the failure to employ Plaintiff post-acquisition.

126.    Plaintiff's engaging in protected activity was a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, including the hostile work environment to which she was subjected, the termination of Plaintiff's employment, and the failure to extend employment to Plaintiff post-acquisition.

127.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

128.    The hostile work environment to which Plaintiff was subjected was a continuing violation that culminated in her termination/non-continuation of employment.

129.    The retaliatory actions taken against Plaintiff after she complained of discrimination and/or after she filed a PHRC/EEOC Complaint/Charge would have discouraged a reasonable employee from complaining of discrimination.

130.    The discriminatory and retaliatory conduct of Defendants, as alleged herein, was severe or pervasive to such an extent as to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

131.    As a direct and proximate result of the discriminatory and/or retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

132.    Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights.

133.    The conduct of Defendants, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

## COUNT I
### Title VII – hostile work environment
### (against Jillamy, Inc.)

134.    Plaintiff incorporates herein by reference paragraphs 1 through 133 above, as if set forth herein in their entirety.

135.    Jillamy subjected Plaintiff to a sex-based and/or retaliatory hostile work environment.

136.    By committing the foregoing acts, Jillamy has violated Title VII.

137.    Said violations were intentional and warrant the imposition of punitive damages.

138.    As a direct and proximate result of Defendant Jillamy's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

139.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Jillamy's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

140.    No previous application has been made for the relief requested herein.

## COUNT II
### Title VII – termination of employment
### (against Jillamy, Inc.)

141.    Plaintiff incorporates herein by reference paragraphs 1 through 140 above, as if set forth herein in their entirety.

142.    Jillamy terminated Plaintiff's employment because of her sex and/or her protected activity.

143.    By committing the foregoing acts, Jillamy has violated Title VII.

144.    Said violations were intentional and warrant the imposition of punitive damages.

145.    As a direct and proximate result of Defendant Jillamy's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

146.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Jillamy's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

147.    No previous application has been made for the relief requested herein.

## COUNT III
### PHRA – hostile work environment
### (against Jillamy, Inc.)

148.    Plaintiff incorporates herein by reference paragraphs 1 through 147 above, as if set forth herein in their entirety.

149.    Defendant Jillamy subjected Plaintiff to a sex-based and/or retaliatory hostile work environment.

150.    By committing the foregoing acts, Defendant Jillamy has violated the PHRA.

151.    Said violations were intentional and warrant the imposition of punitive damages.

152.    As a direct and proximate result of Defendant Jillamy's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

153.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Jillamy's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

154.    No previous application has been made for the relief requested herein.

**COUNT IV**
**PHRA – termination of employment**
**(against Jillamy, Inc.)**

155.    Plaintiff incorporates herein by reference paragraphs 1 through 154 above, as if set forth herein in their entirety.

156.    Defendant Jillamy terminated Plaintiff's employment because of her sex and/or because she engaged in protected conduct.

157.    By committing the foregoing acts, Defendant Jillamy has violated the PHRA.

158.    Said violations were intentional and warrant the imposition of punitive damages.

159.    As a direct and proximate result of Defendant Jillamy's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

160.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Jillamy's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

161.    No previous application has been made for the relief requested herein.

**COUNT V– PHRA**
**(against Jillamy, Inc. as aider and abettor)**

162.    Plaintiff incorporates herein by reference paragraphs 1 through 161 above, as if set forth herein in their entirety.

163.    Jillamy aided and abetted MODE's unlawful failure to hire Plaintiff.

164.    Said violation of the PHRA was intentional and warrants the imposition of punitive damages.

165.    As a direct and proximate result of Defendant Jillamy's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

166.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Jillamy's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

167.    No previous application has been made for the relief requested herein.

**COUNT VI**
**Title VII – hostile work environment**
**(against the MODE Defendants)**

168.    Plaintiff incorporates herein by reference paragraphs 1 through 167 above, as if set forth herein in their entirety.

169.    The sex-based and/or retaliatory hostile work environment to which Plaintiff was subjected culminated in her termination/non-continuation of employment by MODE.

170.    By committing the foregoing acts, the MODE Defendants have violated Title VII.

171.    Said violations were intentional and warrant the imposition of punitive damages.

172.    As a direct and proximate result of the MODE Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

173.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the MODE Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

174.    No previous application has been made for the relief requested herein.

**COUNT VII– TITLE VII**
**(against the MODE Defendants, termination)**

175.    Plaintiff incorporates herein by reference paragraphs 1 through174 above, as if set forth herein in their entirety.

176.    MODE, acting as a joint employer, directed Jillamy to terminate Plaintiff's employment because of her sex and/or her protected activity.

177.    By committing the foregoing acts, the MODE defendants have violated Title VII.

178.    Said violations were intentional and warrant the imposition of punitive damages.

179.    As a direct and proximate result of the MODE Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

180.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the MODE Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

**COUNT VIII– TITLE VII**
**(against the MODE Defendants, failure to hire)**

181.    Plaintiff incorporates herein by reference paragraphs 1 through 180 above, as if set forth herein in their entirety.

182.    The MODE Defendants failed to hire and/or extend an offer of employment to Plaintiff because of her sex and/or her protected activity.

183.    By committing the foregoing acts, the MODE Defendants have violated Title VII.

184.    Said violations were intentional and warrant the imposition of punitive damages.

185.    As a direct and proximate result of MODE's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

186.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the MODE Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

187.    No previous application has been made for the relief requested herein.

**COUNT IX**
**PHRA– hostile work environment**
**(against the MODE Defendants)**

188.    Plaintiff incorporates herein by reference paragraphs 1 through 187 above, as if set forth herein in their entirety.

189.    The sex-based and retaliatory hostile work environment to which Plaintiff was subjected culminated in her termination/non-continuation of employment by MODE.

190.    By committing the foregoing acts, the MODE Defendants have violated the PHRA.

191.    Said violations were intentional and warrant the imposition of punitive damages.

192.    As a direct and proximate result of the MODE Defendants' violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

193.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Jillamy's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

194.    No previous application has been made for the relief requested herein.

**COUNT X – PHRA**
**(against MODE Defendants, termination)**

160.    Plaintiff incorporates herein by reference paragraphs 1 through 159 above, as if set forth herein in their entirety.

161.    The MODE Defendants, acting as a joint employer, directed Jillamy to terminate Plaintiff's employment because she engaged in protected activity.

162.    By committing the foregoing acts of retaliation against Plaintiff, MODE has violated the PHRA.

163.    Said violations were intentional and willful.

164.    As a direct and proximate result of Defendant MODE's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

165.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the MODE Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

166.    No previous application has been made for the relief requested herein.

**COUNT XI – PHRA**
**(against the MODE Defendants, failure to hire)**

167    Plaintiff incorporates herein by reference paragraphs 1 through166 above, as if set forth herein in their entirety.

168.    The MODE Defendants failed to hire and/or extend an offer of employment to Plaintiff because of her sex and/or her protected activity.

169.    By committing the foregoing acts, MODE has violated the PHRA.

170. Said retaliation violations were intentional and warrant the imposition of punitive damages.

171. As a direct and proximate result of MODE's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

172. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the MODE Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

### COUNT XI – PHRA
### (against MODE Defendants, as aider and abettor)

173. Plaintiff incorporates herein by reference paragraphs 1 through 172 above, as if set forth herein in their entirety.

174. Defendant MODE aided, abetted, incited, compelled and/or coerced Jillamy's hostile work environment against and/or the termination of Plaintiff in violation of the PHRA.

175. Said violation of the PHRA was intentional and willful.

176. As a direct and proximate result of Defendant MODE's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

177. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Jillamy's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

178. No previous application has been made for the relief requested herein.

**COUNT XII– PHRA/Successor Liability**
**(in the alternative, against MODE Defendants)**

179.    Plaintiff incorporates herein by reference paragraphs 1 through178 above, as if set forth herein in their entirety.

180.    MODE was aware of Plaintiff's claim of a sex-based and retaliatory hostile work environment in violation of the PHRA before it executed andor closed on the EAPA.

181.    MODE was aware of Plaintiff's protected activity and her pending PHRC/EEOC Complaint/Charge.

182.    MODE was aware of the termination of Plaintiff's employment by Jillamy.

183.    There was a substantial continuity in the operation of the business before and after the closing on the EAPA.

184.    If Jillamy is found liable for violation of the PHRA and is unable to provide the relief requested, MODE is liable as a successor for the sex-based and/or retaliatory hostile work environment to which Plaintiff was subjected and/or for her unlawful termination in violation of  the Title VII.

**COUNT XIII– Title VII/Successor Liability**
**(in the alternative, against MODE Defendants)**

185.    Plaintiff incorporates herein by reference paragraphs 1 through 184 above, as if set forth herein in their entirety.

186.    MODE was aware of Plaintiff's claim of a sex-based and retaliatory hostile work environment in violation of Title VII before it executed and/or closed on the EAPA.

187.    MODE was aware of Plaintiff's protected activity and her pending PHRC/EEOC Complaint Charge.

188.    MODE was aware of the termination of Plaintiff's employment by Jillamy.

189.    There was a substantial continuity in the operation of the business before and after the closing on the EAPA.

190.    If Jillamy is found liable for violation of Title VII and is unable to provide the relief requested, MODE is liable as a successor for the sex-based and/or retaliatory hostile work environment to which Plaintiff was subjected and/or for her unlawful termination in violation of  the PHRA.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of Title VII;

(b)    declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)    enjoining and permanently restraining the violations alleged herein;

(d)    entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(e)    awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(f)    awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's

pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(g)     awarding punitive damages to Plaintiff under Title VII;

(h)     awarding punitive damages to Plaintiff under the PHRA for Defendants' acts of unlawful retaliation;

(i)     awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

(j)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

(k)     granting such other and further relief as this Court may deem just, proper, or equitable including without limitation other equitable and injunctive relief providing restitution for past violations and preventing future violations.


                                        **CONSOLE MATTIACCI LAW, LLC**

                              By:    _s/Susan Saint-Antoine_
                                     Susan Saint-Antoine, Esquire
                                     1525 Locust Street, 9th Floor
                                     Philadelphia, PA 19102
                                     (215) 545-7676 (phone)
Date: March 2, 2026                  (215) 565-2858 (fax)
                                     santanto@consolelaw.com

# Exhibit 1

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |  |
|---|---|---|
| Meredith DeMarco, | : | |
| Complainant | : | |
| | : | |
| v. | : PHRC Case No. 202400083 | |
| | : | |
| Jillamy, Inc., | : EEOC No. 17F202460838 | |
| Respondent | : | |
| | : | |

## **COMPLAINT**

### **JURISDICTION**

1.    Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

### **PARTIES**

2.    The Complainant herein is:

Meredith DeMarco
redacted
Chalfont, PA 18914

3.    The Respondent herein is:

Jillamy, Inc.
160 New Britain Blvd.
Chalfont, PA 18914

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | |
| **MEREDITH DEMARCO** | Docket No. |
| v. | |
| RESPONDENT: | |
| **JILLAMY, INC.** | |

1.  The Complainant herein is:

    Name:        Meredith DeMarco

    Address:     <span style="background:black;color:red">redacted</span>
                 Chalfont, PA 18914

2.  The Respondent herein is:

    Name:        Jillamy, Inc.

    Address:     160 New Britain Blvd
                 Chalfont, PA 18914

3.  I, Meredith DeMarco, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and unlawful retaliation because of my complaints of

and objections to sex discrimination, as set forth below.

### Discrimination and Retaliation

#### A. I specifically allege:

[1]        I was hired by Respondent on or about April 24, 2017.

[2]        I am a current employee of Respondent.

[3]      I currently hold the position of Ocean Export Manager.

[4]      I report to Robert Skulsky (male), Director of International Operations.
Skulsky reports to Ray Knott (male), International Director. Knott reports to Frank Whalen
(male), Executive Vice President. Whalen reports to Ted Kuriger (male), Owner, and Chris
Kiefer (male), President and Owner.

[5]      I am the only female employee reporting to Skulsky.

[6]      I am the highest ranking female in the international sales department.

[7]      The following employees report to Skulsky.

        a) Greg Ryan (male), Import Manager;

        b) Beau Palmore (male), International Traffic Manager.

[8]      I have been treated differently and worse, and in a more hostile and
dismissive manner, than male employees have been treated.

[9]      In March 2022, Knott instructed me to join employees from Respondent at
a conference because they needed "pretty faces" to draw people to Respondent's booth.

[10]     In March 2022, at the conference, employees from Respondent were
invited on a boat tour, which I attended.

[11]     Following the boat tour, Jeanine Judge (female), Sales and Marketing, told
me that Ty Lasalle (male), Director of National Accounts, took a video and photos of me leaning
over the boat.

[12]     I was told that Lasalle may have sent the video of me to other employees.

[13]     Following the boat tour, Knott told me that he took photos of me steering
the boat and stated that, if he was "going to do something dirty to [him]self to a picture of [me],"
it would be a photo of me steering the boat, and he showed me the photo.

[14]     Knott regularly commented about women's bodies and appearances.

[15]     Following the conference, Chris Gordon (male), Head of Sales

Department, told me that James Cardonna (male), _____, took a photo of me at dinner and

zoomed in on my breasts.

[16]     I objected to the sex discriminatory, including sexist and sexual,

comments and conduct toward me.

[17]     Employees discussed my having a sexual relationship with Ben Shaftel

(male), Operations Manager.

[18]     Male employees commented about me "fucking" Shaftel.

[19]     Knott commented to male employees, as I was going on my lunch break,

that I "better make it a quick fuck today."

[20]     Gordon commented to me that he wished that I had "feelings" for him and

wished that the rumors about Shaftel and me having a relationship were about him and me

having a relationship.

[21]     Gordon repeatedly asked me if I was having a relationship with Shaftel.

[22]     Gordon repeatedly asked other employees if I was having a relationship

with Shaftel.

[23]     Employees asked me if I was having a relationship with Gordon.

[24]     After I rebuffed his advances, Gordon yelled at me.

[25]     Gordon refused to work with me, which negatively impacted my ability to

do my job.

[26]     Skulsky instructed me to tell him every time I left the building, unlike

male and/or noncomplaining employees.

[27]    Skulsky instructed me to park on a different side of the building from where Shaftel parked.

[28]    Skulsky instructed me to use the bathroom downstairs because Shaftel's department was by the upstairs bathroom.

[29]    Skulsky yelled at me.

[30]    Skulsky unjustly criticized the number of emails that I sent.

[31]    Palmore told me that Knott and Skulsky had been in my office, going through my things, looking to see how often Shaftel and I spoke on the office phones, and stated that they were looking to get rid of me.

[32]    **In** or about January 2023, in a meeting with Kelli Isler (female), Human Resources, I complained of sex discrimination to which I had been subjected at Respondent. I provided many of the examples in this Complaint. She told me that Knott and Skulsky had come to her to tell her that I was having an affair with Shaftel.

[33]    I did not receive any substantive response to my above sex discrimination complaint.

[34]    In or about February 2023, in a complaint submitted to Isler and Megan Christensen (female), In-House Counsel, I complained of sex discrimination to which I had been subjected at Respondent and Respondent's failure to remedy or prevent the sex discrimination and retaliation to which I had been subjected.

[35]    I did not receive any substantive response to my above sex discrimination complaint.

[36]    Following my sex discrimination complaints, I was treated differently and worse and in an increasingly hostile and dismissive manner.

[37]    I have been excluded from communications and meetings related to my job duties and responsibilities.

[38]    My performance has been unjustly criticized.

[39]    I have been assigned menial tasks.

[40]    I have been belittled.

[41]    I have been demeaned.

[42]    I have been spoken to in a condescending manner.

[43]    Respondent failed to investigate my sex discrimination and retaliation complaints.

[44]    Respondent failed to remedy or prevent the sex discrimination and retaliation to which I have been subjected.

[45]    Respondent subjected me to a hostile work environment because of my sex and/or my sex discrimination complaints and/or my objections to sex discrimination.

[46]    The sex- and retaliatory-based hostile work environment to which I have been subjected at Respondent constitutes a continuing violation.

[47]    Other female employees of Respondent have complained of sex discrimination and retaliation.

[48]    Respondent's sex discriminatory and retaliatory conduct and comments have caused me emotional distress.

**B.**  Respondent has discriminated against me because of my sex (female) and retaliated against me because of my complaints of and objections to sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.*

("PHRA").

    4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices

in violation of:

    __X__    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s): __(a); (d)__**

    ____    Section 5.1 Subsection(s) _____

    ____    Section 5.2 Subsection(s) _____

    ____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

    5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

    __X__    **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

    6.    The Complainant seeks that Respondents be required to:

    (a) Make the Complainant whole.

    (b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

    (c) Remedy the discriminatory effect of past practice(s) and procedure(s).

    (d) Take further affirmative action necessary and appropriate to remedy the violation

complained of herein.

    (e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.


7/12
(Date Signed)

Meredith DeMarco
(Signature)    Meredith DeMarco
                redacted
                Chalfont, PA 18914

# Exhibit 2

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |  |
|---|---|---|
| Meredith DeMarco, | : | |
| Complainant | : | |
| | : | |
| v. | : | PHRC Case No. 202400888 |
| | : | |
| Jillamy, Inc.; MODE Global, LLC; | : | EEOC No. 17F202560125 |
| MODE Transportation, | | |
| Respondent | : | |
| | : | |

## **COMPLAINT**

## **JURISDICTION**

1.    Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

## **PARTIES**

2.    The Complainant herein is:

Meredith DeMarco
redacted
Chalfont, PA 18914

3.    The Respondent herein is:

Jillamy, Inc.; MODE Global, LLC; MODE Transportation
160 New Britain Blvd.
Chalfont, PA 18914

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

### SECOND COMPLAINT

COMPLAINANT:

**MEREDITH DEMARCO**

v.

RESPONDENTS:

**JILLAMY, INC.**

and

**MODE GLOBAL, LLC**

and

**MODE TRANSPORTATION**

Docket No.   2024008488

1. The Complainant herein is:

    Name:                Meredith DeMarco

    Address:             <span style="background:black;color:red">redacted</span>
                         Chalfont, PA 18914

2. The Respondents herein are:

    Names:               Jillamy, Inc.; MODE Global, LLC; MODE Transportation

    Address:             160 New Britain Blvd
                         Chalfont, PA 18914

3. I, Meredith DeMarco, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and unlawful retaliation because of my engaging in

protected activity, as set forth below.

From: Nancy Glec

### Discrimination and Retaliation

#### A. I specifically allege:

[1]      On July 15, 2024, I filed my first PHRC Complaint.

[2]      On July 20, 2024, in an email to Robert Skulsky (male), Director of International Operations, Frank Whalen (male), Executive Vice President, and Kelli Issler (female), Human Resources, I attached a copy of my first PHRC Complaint and stated the following: "As a courtesy, I want to inform you that I have filed a Complaint of discrimination and retaliation with the Pennsylvania Human Relations Commission, a copy of which is attached. Thank you."

[3]      I received no response to my above email.

[4]      On October 18, 2024, in a meeting with Ted Kuriger (male), Owner of Respondent Jillamy, Inc., he stated that he wanted to talk with me about my PHRC Complaint. He asked me how we got here. I complained of sex discrimination, including sexual harassment, and retaliation, and provided details of the same that I included in my first PHRC Complaint. He stated that Respondents MODE Global, LLC and MODE Transportation were aware of my PHRC Complaint.

[5]      On October 24, 2024, Skulsky came into my office and asked me questions about how I did my job.

[6]      On October 24, 2024, following the above, in a meeting with Whalen, Issler, Christopher Figaroa (male), Traffic Coordinator, and Ben Shaftel (male), Truckload Pricing Manager, Respondents terminated my employment, effective immediately. The stated reason was that my job was duplicated by other employees. This is false. I asked if my PHRC Complaint was the reason why I was terminated.

[7]  I received no explanation, including the criteria, as to why I was terminated and male and/or noncomplaining employees were retained.

[8]  I had no opportunity to remain employed with Respondents.

[9]  Respondents retained male employees about whom I complained of sex discrimination and retaliation.

[10]  I had no performance or disciplinary issues throughout my employment.

[11]  I was the only employee reporting to Skulsky who was terminated on October 24, 2024.

[12]  Respondents retained all other employees reporting to Skulsky—all of whom were male and noncomplaining.

[13]  Respondents failed to investigate my sex discrimination and retaliation complaints.

[14]  Respondents failed to remedy or prevent the sex discrimination and retaliation to which I was subjected.

[15]  Respondents subjected me to a hostile work environment because of my sex and/or my engaging in protected activity, including my filing a PHRC Complaint.

[16]  Respondents terminated my employment because of my sex and/or my engaging in protected activity, including my filing a PHRC Complaint.

[17]  The sex- and retaliatory-based hostile work environment to which I have been subjected at Respondents constitutes a continuing violation.

[18]  Other female employees of Respondents have complained of sex discrimination and retaliation.

[19]   Respondents' sex discriminatory and retaliatory conduct and comments have caused me emotional distress.

**B.**  Respondents have discriminated against me because of my sex (female) and retaliated against me because of my engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.   The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

__X__   **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a); (d)__**

____   Section 5.1 Subsection(s) _____

____   Section 5.2 Subsection(s) _____

____   Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.   Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

__X__   **This charge will be referred to the EEOC for the purpose of dual filing.**

6.   The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

11/11/24
(Date Signed)

(Signature)     Meredith DeMarco

redacted

Chalfont, PA 18914